Argued September 9, 1971, reversed and remanded
January 19, 1972

STATE OF OREGON, *Respondent, v.* TERRY
LEE ZIMMERLEE, *Petitioner.*

492 P2d 795

*William H. Ferguson*, Medford, argued the cause for petitioner. With him on the briefs was Robert H. Grant, Medford.

*Thomas H. Denney*, Assistant Attorney General, Salem, argued the cause for respondent. With him on the briefs were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

O'CONNELL, C. J.

Defendant was convicted of the crime of armed robbery (ORS 163.280). The Court of Appeals affirmed the judgment of conviction, whereupon defendant filed this petition for review.

The following is an adaptation of the statement of facts set out in the Court of Appeals' opinion at 92 Or Adv Sh 569, 5 Or App 253, 483 P2d 111 (1971). Defendant accosted Larry Palmer, the complaining witness, at about 6:30 p.m. on March 6th, 1970, inside a drive-in restaurant in Medford. Defendant told Palmer that he had some friends outside who had bet that he, defendant, could not get Palmer's boots away from him. Later, Palmer went out to the restaurant parking lot and while sitting on his motorcycle defendant again approached him and asked for his boots, offering one dollar for them. Palmer refused until he noticed that

defendant was pointing a pistol at him. Palmer testified, "I started moving and he said, 'It's cocked and it's loaded' and he says, 'I think we want your boots now,' and I said, 'Yes, I think you do,' so I bent over and started unbuckling them."

Defendant took the boots without paying for them and before he drove away with his companions he left his own shoes after Palmer complained that he had nothing for his feet. Defendant contended at trial that the exchange was a free trade.

As a part of its case the state introduced evidence to show that later on the same evening Frank Charley, while driving in the city of Medford, was pursued by defendant and some other men in the course of which defendant challenged Charley to a fight. When Charley arrived at his destination defendant alighted from the pursuing automobile and threatened Charley with a pistol. Defendant then handed the pistol to a companion and provoked a fight with Charley. At this point a police officer arrived and arrested defendant. The officer testified that he searched the vicinity and found a pistol approximately 25 or 30 feet from the scene of the fight. The pistol was received in evidence and Palmer testified that it appeared similar to the one defendant had used at the encounter with him. Defendant objected to the evidence of this later episode between defendant and Charley and offered to stipulate that he had the pistol in his possession when he pursued Charley. The state rejected defendant's offer to stipulate.

The trial court permitted the state to introduce evidence of the later incident between defendant and Charley on the ground that it showed a common scheme or plan embracing the commission of two

crimes so related to each other that proof of one would tend to establish the proof of the other. The Court of Appeals held that the evidence was properly received on the same ground. In doing so, the court said:

> "The evidence disclosed that defendant, in company with other men, was traveling about Medford in a vehicle on the evening involved, aggressively sought trouble, and displayed a pistol in each of the two incidents. The trial judge considered this to be a common scheme or plan. This is a logical inference that can be drawn from the evidence. The prosecution was entitled to prove the later incident by evidence. Defendant could not lighten the impact of competent and complete evidence against himself by stipulating to part of it. State v. Leland, 190 Or 598, 630, 227 P2d 785 (1951), aff'd 343 US 790, 72 S Ct 1002, 96 L Ed 1302 (1952)." *State v. Zimmerlee,* 92 Adv Sh 569, 571, 5 Or App 253, 483 P2d 111 (1971).

■ We hold that it was reversible error to receive the evidence of the later incident. The basic rule is stated in McCormick on Evidence, § 157, p. 327 (1954):

> "* * * The rule is that the prosecution may not introduce evidence of other criminal acts of the accused unless the evidence is substantially relevant for some other purpose than to show a probability that he committed the crime on trial because he is a man of criminal character."

McCormick goes on to point out that the evidence of other criminal acts committed by the defendant may be received:

> "To prove other like crimes by the accused so nearly identical in method as to ear-mark them as the handiwork of the accused. Here much more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. The device used must be so un-

usual and distinctive as to be like a signature."
*Id.* at 328.

The exception is explained in 2 Wigmore on Evidence
§ 304, p. 202 (3d ed 1940):

"The added element, then, [in evidencing design
or system rather than intent] must be, not merely a
similarity in the results, but *such a concurrence of
common features that the various acts are naturally
to be explained as caused by a general plan of
which they are the individual manifestations.*"

We do not think that the two alleged criminal
acts of the defendant had a common "signature" to
bring the case within the exception to the rule pre-
cluding evidence of other crimes. In the first place,
it is difficult to find a similarity in the general *modus
operandi* of a criminal assault and a robbery. Even if
both crimes are accompanied by the use of a gun, the
common feature does not show a distinctive type of
conduct sufficient to characterize it as a signature. The
conduct of defendant in the two instances other than
the use of the gun was quite different. The robbery
was conducted in a rather calm and casual manner,
touched with a sense of grim humor; the assault ap-
peared to have the character of a taunting, open mean-
ness and belligerency. The fact that on both occasions
defendant was accompanied by companions is not dis-
tinctive. We can see no other special earmarks of de-
fendant's method of violating the law which would
justify the application of the exception to the rule
excluding evidence of other crimes.

█ The evidence of defendant's encounter with
Charley was relevant to the issue of defendant's pos-
session of the gun at the time of the robbery. If
defendant had not offered to stipulate that he had

possession of the gun when he pursued and assaulted Charley, the evidence of the assault would have been admissible because in that event the probative value of the other crime would outweigh the prejudicial effect which might flow from the proof of the other crime. But it was unnecessary for the state to introduce evidence to prove that defendant had possession of the gun in his encounter with Charley because defendant offered to stipulate that he had possession of the gun at that time. As we have previously noted, the state rejected defendant's offer to stipulate. Although we have held that the state may prove its case "to the hilt,"[1] that privilege is not open to the state in circumstances where its exercise would unnecessarily expose a defendant to prejudice. Once defendant offered to stipulate that he had possession of the gun subsequent to the alleged robbery, the only purpose that would be served by permitting the state to prove the subsequent crime would be to show that because defendant had committed another crime he was a bad man and therefore probably committed the crime for which he was charged. In these circumstances the prejudicial effect of the evidence would outweigh its probative value and it is not admissible.[2]

The judgment of the trial court is reversed and the cause is remanded for a new trial.

BRYSON, J., dissenting.

I dissent because the facts of this case raise the conflicting issues of receiving evidence prejudicial to

---

[1] State v. Leland, 190 Or 598, 630, 227 P2d 785 (1951), aff'd. 343 US 790, 72 S Ct 1002, 96 L Ed 1302 (1952); State v. Grieco, 184 Or 253, 258, 195 P2d 183 (1948); State v. Young, 52 Or 227, 230, 96 P 1067, 132 Am St Rep 689, 18 LRA(NS) 688 (1908).

[2] See Lacy, Admissibility of Evidence of Crimes Not Charged in the Indictment, 31 Or L Rev 267 (1952).

the defendant and evidence that might be material to the state's case. The jury's ability to sift the evidence and follow the court's general instructions on how to weigh the evidence should not be disregarded. The evidence received was not *clearly* prejudicial. Article VII Amended, § 3 of the Oregon Constitution provides in part:

"* * * If the supreme court shall be of opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial; * * *."

ORS 138.230 provides:

"After hearing the appeal, the court shall give judgment, without regard to the decision of questions which were in the discretion of the court below or to technical errors, defects or exceptions which do not affect the substantial rights of the parties."

This involves the state's right as a party as well as the defendant's rights. *See State v. McLean,* 255 Or 464, 468 P2d 521, 524, 527 (1970). The state had to prove defendant's guilt beyond a reasonable doubt as the defendant pleaded "not guilty." It was entitled to offer its best evidence and that would include that the defendant had committed another rather bizarre crime some five hours after the robbery, of which the jury found him guilty, by again brandishing the same pistol. *See State v. Howell,* 237 Or 382, 388 P2d 282 (1964) (burglary of two schools on the same day with the same accomplices); *State v. La Rose,* 54 Or 555, 104 P 299 (1909) (two murderous assaults made in similar peculiar manner).