## STATE OF OREGON, *Respondent,*
### *v.*
## JEFFERY INGRAM, *Appellant.*
## (No. C 75-03-0735 Cr, CA 5377)

551 P2d 1303

*John K. Hoover,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*W. Michael Gillette,* Solicitor General, Salem, argued the cause for respondent. With him on the brief was Lee Johnson, Attorney General, Salem.

[ 43 ]

Before Schwab, Chief Judge, and Langtry and Foley, Judges.

LANGTRY, J.

Defendant was convicted on jury trials of separate burglaries (ORS 164.215) of two large department stores located across the street from one another in downtown Portland. This appeal is from the conviction of the second burglary which occurred on March 8, 1975 in the Meier & Frank store. It was tried in May 1975. Defendant has also appealed from the other conviction, a burglary of Lipman Wolfe & Company occurring on January 21, 1975, and the trial therefor occurred in June 1975, after a May 1975 trial of the Lipman case ended in a mistrial. So far as it can contribute to brevity the facts related in the companion case, *State v. Ingram,* 26 Or App 37, 551 P2d 1301 (1976), will encompass both cases.

The only assignments of error in the cases refer to the admission of evidence relating to the other burglary.

Defendant was apprehended by a security guard in the Meier & Frank store on the night of March 8-9 at 12:35 a.m., hiding behind a door. The store had been closed to the public for several hours. Defendant had in his possession several small, new items that could have been taken by him in the store. Earlier in the evening, at a separate burglar alarm center, the alarm system had been activated several times from the jewelry section of the store, resulting in searches of the premises which produced nothing. Defendant had on him some keys which he told police were to Lipman's store. He said in explanation of his presence in Meier & Frank's that he had gone to sleep in one of the restrooms while the store was open and had awakened to find himself locked in. Evidence was received that the restrooms had been inspected shortly after closing and no one was found in them.

Testimony was received over objection that about two years previously defendant had worked at Lipman's on an early morning (before the store would

open for the day) cleanup job; and that he had then expressed to a supervisor an interest in the alarm system there. Testimony was also received that as late as January 1975 (two weeks before the Lipman burglary, but nothing was testified to about that burglary), after defendant no longer worked at Lipman's, he had made a special trip to the home of his former supervisor there asking about the Lipman security system and whether dogs were kept on the premises. No evidence was received on the subject of whether defendant *knew* that the same security systems were in both stores, but testimony was received that both stores did have American District Telegraph (burglar alarm) systems. Therefore, the most unfavorable inference against defendant that could be drawn from the challenged evidence which was received is that defendant had an unusual curiosity and had gained some knowledge about the night security in a neighboring department store. The question, then, is was this relevant?

■■ We think it was, considering the other circumstances in the case. It had a tendency, depending on the weight the jury gave it, to show that defendant had more than just innocent intentions when he stayed in the store after closing. Intent to commit a crime in the building entered is an essential element of burglary. Defendant had given the police explanations for his unusual presence in the store and this was repeated by them at the trial. The state had a right to introduce evidence which tended to refute what he had given in explanation of his intentions and was not limited alone to the inferences which could be drawn from the other direct evidence in the case.

In *State v. Krummacher,* 269 Or 125, 144, 523 P2d 1009 (1974), the Oregon Supreme Court said:
" 'Because of the wide variety of facts that may have circumstantial probative value, the courts are liberal in admitting evidence of facts which appear to bear some degree of relevance to the matters in issue. Much discretion is left to the trial judge, and his rulings will be

sustained if the evidence which is admitted tends even somewhat remotely to show that a fact in controversy did or did not exist.' "

Affirmed.